# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
## Alexandria Division

| | |
|---|---|
| JUDITH KNIGHT,<br>Individually and on behalf of others<br>similarly situated,<br><br>Plaintiff,<br><br>-v-<br><br>GILBERT S. LAVINE, ET AL,<br><br>Defendants. | Civil Action No. 1:12-CV-611 |

## MEMORANDUM OPINION

Before the Court is Plaintiffs' motion to certify a class filed on November 20, 2012 (Dkt. No. 38). The Defendants filed a response on December 3, 2012 (Dkt. No. 42) and the Plaintiffs replied on December 10, 2012 (Dkt. No. 47). The Court heard arguments on December 14, 2012 and now issues this opinion and accompanying order granting the motion.

## Factual Background

The Bureau of National Affairs (BNA) is a company that publishes legal and business materials. At all times relevant to this action, BNA was a privately owned corporation, and the Defendants were directors of the company, or members of the administrative committee that oversaw BNA's employee retirement plan. BNA has since been purchased and is now a wholly-owned subsidiary of Bloomberg, Inc. The named Plaintiff, Ms. Judith Knight, is a former employee of BNA. She worked at the company from 1978 until 1999, and remained invested in the company's 401(k) plan after she left.

1

BNA offered two vehicles by which employees could invest in the company's stock. One was a 401(k) plan, a defined contribution plan organized under the Employee Retirement Income Security Act. The other was a Stock Purchase and Transfer Plan ("SPTP"), which was a series of non-ERISA vehicles created every six months. The board would set a stock price at the inception of each SPTP which would persist for six months at which time the plan would terminate and the employee stock would roll over to the next SPTP—with a new stock price, again set by the board.

In March 2011, the BNA board of directors set the stock price at $17.50 per share. In June 2011, shortly before Ms. Knight turned 65, she received notice from BNA indicating that she would have to withdraw her account balance from the company's 401(k) plan. The account included approximately 30,000 shares of BNA stock. She had the option to either sell her shares back to BNA at the current SPTP price, or to keep the shares but transfer them into the company's SPTP. Ms. Knight chose to sell her shares back to BNA at the then-active SPTP price of $17.50 per share.

About a month after Ms. Knight elected to sell her shares back to BNA at $17.50, BNA was acquired by Bloomberg, Inc. at a price of $39.50 per share. Ms. Knight alleges that BNA was in talks to complete the sale before the board set the share price at $17.50, so it had reason to believe that the proper share price should have been higher. Her claims are grounded in the board's fiduciary duty, imposed by ERISA, to disclose relevant information regarding the potential sale so the plan participants could make an informed decision regarding their investments, and to set the share price in good faith.

Ms. Knight and her counsel now seek to certify a class of all participants in the BNA 401(k) plan who sold BNA shares from their accounts between the time that BNA set the share

price at $17.50 and the time Bloomberg acquired BNA.

## Analysis

### ERISA cause of action

The Plaintiffs are bringing this action under ERISA § 502(a)(2), which provides a civil enforcement mechanism for ERISA plan participants or beneficiaries (among others) to hold plan fiduciaries personally liable for breaches of the duties imposed upon them by the statute. 29 U.S.C. §§ 1132(a)(2), 1109.

ERISA holds plan fiduciaries to a "prudent man" standard of care. 29 U.S.C. § 1104. It requires fiduciaries to perform their duties "solely in the interest of the participants and beneficiaries . . . for the exclusive purpose of providing benefits to participants and beneficiaries . . . ." 29 U.S.C. § 1104(a)(1).

It is Plaintiffs' contention that the defendants were all fiduciaries of the BNA 401(k) plan, and that they failed to act solely in the interest of the participants and beneficiaries of the plan by withholding information about the Bloomberg acquisition and improperly setting the share price.

### Class Certification under Rule 23

The Plaintiffs seek to certify a class of:

> All persons who were participants in, or who were beneficiaries of the BNA 401(k) Plan ("Plan") at any time from March 10, 2011 through August 25, 2011 ("Class Period"), and whose Plan accounts were invested in Company Stock, and who divested Company stock in their Plan accounts during the Class Period. The Class excludes the Defendants, the officers and directors of the Company, and members of their immediate families, and other individuals who may be liable for the conduct described in the Complaint.

3

This Court may grant her request if the proposed class satisfies the four requirements of Federal Rule of Civil Procedure 23(a), widely referred to as numerosity, commonality, typicality, and adequacy, and if the proposed class also fits into at least one of the categories set forth in Rule 23(b). This opinion will consider each in turn.

*Rule 23(a)*

The first requirement of Rule 23(a) is that the class members be "so numerous that joinder of all members is impracticable." The Fourth Circuit has affirmed certification for classes as small as 18 people. *Cypress v. Newport News General and Nonsectarian Hospital Assoc.*, 375 F.2d 648, 653 (4th Cir. 1967). In this case, the proposed class comprises 56 individuals, which easily satisfies numerosity under Rule 23(a)(1).

Rule 23(a)(2) requires that there are "questions of law or fact common to the class." In order to satisfy the commonality requirement, the claims of all plaintiffs must depend upon a common contention, and they must all have suffered the same injury. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).

The primary question in this litigation will be whether the Defendants breached their fiduciary duty to the plan and the Plaintiffs as negotiations with Bloomberg and other potential buyers progressed. The focus will be on the Defendants' conduct—conduct which was identical as to each class member. Similarly, the injury alleged is classwide; it does not affect only Ms. Knight's individual 401(k) account. Issues of individual losses, and specific damages amounts, will only become relevant if the fact-finder determines that the Defendants did indeed breach their fiduciary duty, at which point the allocation of damages ought to be quite straightforward.

The Defendants argue that whether each class member relied to their detriment on representations of the fiduciaries is a highly individualized, and critical, inquiry which makes this case unsuitable for class treatment due to lack of commonality. Whether or not reliance is a necessary element of a § 502(a)(2) misrepresentation claim appears to be an open question in the Fourth Circuit. The Circuit has indicated reliance is not a requirement in the context of injunctive remedies under § 502(a)(3). *See Adams v. The Brink's Co.*, 261 F. App'x 583, 589-90 (4th Cir. 2008). This Court suspects that reliance is not a requirement under § 502(a)(2), either, but the class may be certified either way because the misvaluation claim does not require reliance.[1]

The issues of commonality in this case are quite different from *Wal-Mart Stores, Inc. v. Dukes*. 131 S. Ct. 2541 (2011). In *Dukes*, the Supreme Court refused to certify a class of current and former female employees of Wal-Mart stores, all claiming gender discrimination. *Id.* at 2561. The Court held that the common question of law or fact used to satisfy commonality must be of "such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 2551. In *Dukes* the conduct in question was the hiring and promotion practices of many managers in many different Wal-Mart Stores. Here, each Plaintiff alleges the same conduct constituted the same breach of fiduciary duty by the same individuals. Whether or not a breach did indeed occur is a

---

[1] It appears from the briefing that there may be a dispute lurking in this case over whether or not the Plaintiffs have alleged a claim that the Defendants improperly set the value of BNA stock at the March 2010 meeting. Whether or not the complaint explicitly alleges such a claim, the litigation has progressed to a point where filing an amended complaint would be onerous, especially since it's unnecessary—the facts alleged in the complaint are sufficient to make out a misvaluation claim. The parties' disagreement over whether reliance is an essential element of the disclosure claim falls away in light of the misvaluation claim, because it does not require individual reliance findings. If the price of the stock was too low, then every individual who divested at the too-low price is entitled to the difference in price.

question ripe for classwide resolution.

The commonality inquiry merges somewhat with the typicality requirement, which is expressed in Rule 23(a)(3): "the claims of the parties [must be] typical of the claims or defenses of the class." The representative nature of a § 502(a)(2) suit makes it almost tautological that the named plaintiff's claim is typical of the rest of the class. *See DiFelice v. U.S. Airways, Inc.*, 235 F.R.D. 70 (2006).

The Defendants would like the Court to adopt the reasoning that the Seventh Circuit used in *Spano v. Boeing Co.*, 633 F.3d 574, 582 (7th Cir. 2011). That court's reasoning was sound, and it noted, "To determine whether class treatment is appropriate, we must distinguish between an injury to one person's retirement account that affects only that person, and an injury to one account that qualifies as a plan injury. The latter . . . would be appropriate for class treatment, while the former would not." *Id.* at 580. The case now before this Court falls into the latter category. Ms. Knight's claims are typical of the class, as are the claims of all the putative class members—they all claim harm to the plan.

Finally, Rule23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." The Defendants argue that Ms. Knight cannot adequately represent the interests of the proposed class because she made statements in a deposition which suggest she did not know she was allowed to take an in-kind distribution of her 401(k) stock when she made the decision to sell her shares. This argument runs along the same lines of the reliance issue the Defendants raised to dispute commonality and typicality. As discussed above, the Court does not find that individual differences in whether and how the class members relied on representations by the Defendants make this case inappropriate for class treatment.

6

The Court finds that all four requirements of Rule 23(a), numerosity, commonality, typicality, and adequacy, are satisfied.

*Rule 23(b)*

In addition to meeting all of the requirements in Rule 23(a), a proposed class must fit within one of the categories described in Rule 23(b). The Plaintiffs do not seek certification under Rule 23(b)(3), only 23(b)(1) and (b)(2).

Rule 23(b)(1) allows class certification if individual actions would either create a risk of establishing incompatible standards of conduct for the defendants , Rule 23(b)(1)(A), or if adjudication of one claim would be dispositive of (or would substantially impair) the interests of other class members, Rule 23(b)(1)(B). Other courts in this district have held that "[a]lleged breaches by a fiduciary to a large class of beneficiaries present an especially appropriate instance for treatment under Rule 23(b)(1). Indeed, given the derivative nature of suits brought pursuant to § 502(a)(2) on behalf of the Plan, ERISA litigation of this nature presents a paradigmatic example of a (b)(1) class." *See DiFelice*, 235 F.R.D. at 80 (internal quotations and citations omitted).

This Court sees no reason to depart from the reasoning in *DiFelice*. Suppose two Plaintiffs from the proposed class were to litigate their claims individually, and the first Plaintiff prevailed on his claim that the Defendants breached their fiduciary duty. The second Plaintiff would argue that the first result is preclusive in her case. If the court agreed with her, then Rule 23(b)(1)(B)'s requirement would be met because the first Plaintiff's result was dispositive of hers. If the court did not find the first result preclusive and the second Plaintiff proceeded to trial and lost, then incompatible standards of conduct for the

Defendants resulted because the exact same actions would be deemed breaches of fiduciary duty (first Plaintiff) and also ratified as non-breaches (second Plaintiff). This second scenario places the proposed class within the purview of Rule 23(b)(1)(A).

The Plaintiffs also seek to certify their class under Rule 23(b)(2), which provides for certification when the class seeks injunctive or "corresponding declaratory" relief that applies generally to the entire class. Certification is also proper under Rule 23(b)(2) because the Plaintiffs seek a declaration that the Defendants breached their fiduciary duty. To be sure, they also seek monetary damages, but how the damages should be distributed is secondary to the question of whether a breach occurred.

In *Dukes*, the Supreme Court explained that the key to certifying a class under Rule 23(b)(2) was "the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." 131 S. Ct. at 2557 (internal quotes omitted). In the case at bar, a single declaratory judgment that the conduct of Defendants was unlawful (or not) would resolve all of the Plaintiffs' claims. For this reason, certification under Rule 23(b)(2) is also appropriate.

## Conclusion

The class proposed by Plaintiffs would help bring a consistent, efficient resolution to this dispute. The proposed class satisfies all of the requirements of Rule 23(a), and fits within the bounds of both Rule 23(b)(1) and 23(b)(2). Therefore, the Court grants the Plaintiffs' motion to certify a class comprising:

> All persons who were participants in, or who were beneficiaries of the BNA 401(k) Plan ("Plan") at any time from March 10, 2011 through August 25, 2011 ("Class

Period"), and whose Plan accounts were invested in Company Stock, and who divested Company stock in their Plan accounts during the Class Period. The Class excludes the Defendants, the officers and directors of the Company, and members of their immediate families, and other individuals who may be liable for the conduct described in the Complaint.

The parties are referred to the accompanying order for further instructions.

February 4, 2013
Alexandria, Virginia

/s/
Liam O'Grady
United States District Judge